## UNITED STATES DISTRICT COURT
## EASTERN  DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| **ROBERT LESHNER &** | : | **Case No. _____** |
| **ASSOCIATES, INC.** | : | |
| **c/o Registered Agent: James R. Cummins** | : | **JUDGE _____** |
| **Cummins Law LLC** | : | |
| **312 Walnut Street, Suite 1530** | : | |
| **Cincinnati, Ohio 45202** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **Douglas E. Kisker** | : | **COMPLAINT** |
| **740 Centre View Boulevard, 5ᵗʰ Floor** | : | |
| **Crestview Hills, Kentucky 41017** | : | |
| | : | |
| **Defendant.** | : | |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

Plaintiff Robert Leshner & Associates, Inc. ("RLA" or "Plaintiff"), by Plaintiff's undersigned counsel, for Plaintiff's Complaint against Defendant Douglas E. Kisker ("Kisker" or "Defendant"), alleges the following based upon personal knowledge and upon information and belief as to all other matters.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is an action for breach of a Promissory Note ("Promissory Note") and breach of a Personal Guaranty ("Personal Guaranty").  This action arises out of a breach of an Agreement for Purchase and Sale of Assets ("Agreement") and breach of an

Employment Agreement ("Employment Agreement") associated with the Agreement.[1] On August 1, 2014, Kisker & Associates ("K&A"), a Kentucky sole proprietorship wholly owned by Defendant Kisker, River Hills Consulting Services LLC ("River Hills"), a Kentucky limited liability corporation, and Defendant Kisker purchased from Plaintiff Robert Leshner & Associates, Inc. ("RLA" or "Seller") its investment advisory business.  Robert H. Leshner, now deceased ("Leshner"), was the principal owner of Seller RLA.  K&A and River Hills also sought to associate and engage with RLA and Leshner in order to provide his investment advisory services to RLA's clients as per an Employment Agreement for the personal services of Leshner made in conjunction with the Agreement.

2.      K&A, River Hills, and Kisker have failed to pay RLA and Leshner for the assets received under the Agreement, as well as for the services Leshner rendered under the Employment Agreement prior to his decease, all as is more particularly described below.

3.      As a result of the wrongful acts and omissions of K&A, River Hills, and Kisker, they have breached the subject agreements, and Plaintiffs have suffered significant losses and damages.  These significant losses and damages include monies owed by Kisker under a breached Promissory Note and Personal Guaranty, as set forth below.

---

[1] An action will shortly be filed in the U.S. District Court, Southern District of Ohio with regard to the breach of the Agreement for Purchase of Sale of Assets and breach of Employment Agreement against Kisker & Associates, River Hills Consulting Services LLC, and Defendant Kisker herein, as was agreed by the parties thereto in those agreements ("All claims relating to this Agreement its negotiation, interpretation, performance or breach, shall be exclusively filed, heard and adjudicated in the federal and state courts located in Cincinnati, Hamilton County, Ohio.").

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332(a), because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and pursuant to 28 U.S.C. §1332(a)(1), as this action is between citizens of different States.  This Court has personal jurisdiction over Defendant Kisker because, directly or through their subsidiaries, related entities, or agents, Defendant Kisker conducted business in Kentucky including, but not limited to, investment advisory services.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because: (a) a substantial portion of the transactions and wrongs complained of herein – including Defendant Kisker's primary participation in the wrongful acts - occurred in this District; (b) Defendant Kisker has received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District; and (c) the parties agreed to the venue of this Court in both the Promissory Note and Personal Guaranty which are the subject of this action.

## PARTIES

6.      Plaintiff Robert Leshner & Associates, Inc. ("RLA") is an Ohio corporation with its principal place of business located in Cincinnati, Hamilton County, Ohio.

7.      Upon information and belief, Defendant Douglas E. Kisker ("Kisker") currently resides in Kentucky, and at all times relevant was the sole proprietor of Kisker & Associates, with its last known principal place of business located at 2890 Chancellor Drive, Suite 220, Crestview Hills, Kentucky 41017.  He is also the managing member

and a member of River Hills Consulting Services LLC ("River Hills"), a Kentucky limited liability company with its principal place of business located at 740 Centre View Boulevard, 5th Floor, Crestview Hills, Kentucky 41017.

## STATEMENT OF FACTS

Introduction

8.      On August 1, 2014, Kisker & Associates ("K&A"), a sole proprietorship of Defendant Kisker, and River Hills Consulting Services LLC ("River Hills") entered into an Agreement for Purchase and Sale of Assets ("Agreement") with Plaintiff Robert Leshner and Associates, Inc. ("RLA" or "Seller") and Robert H. Leshner ("Leshner"), now deceased, the then principal owner of Seller RLA.

9.      RLA was in the investment advisory business and provided its services to individuals, business entities, trusts and families.  Pursuant to the Agreement between them, K&A, River Hills, and Defendant Kisker purchased substantially all of RLA's assets and RLA delivered substantially all of the assets on the closing of the purchase transaction.

10.      River Hills is described in the Agreement as being "the back office servicing arm of Buyer K&A, a sole proprietorship that is in turn the owner and operator of a private wealth advisory franchise . . . of Ameriprise Financial Advisors, Inc." ("Ameriprise Franchise") under a written Franchise Agreement with Ameriprise ("Franchise Agreement").

11.     The express intent of K&A, River Hills, and Defendant Kisker in entering into the Agreement was "to associate and engage with the Seller [RLA] and RLA [Leshner] in order to obtain the opportunity to provide his  investment advisory services under the Ameriprise Franchise to Seller's [RLA's] Clients (as defined herein below)."

Facts Related to the Breach of Agreement for Purchase and Sale of Assets

12.     Under the Asset Purchase Agreement as set forth in Article 2, RLA and Leshner  agreed to sell the agreed upon assets, including RLA's business, to K&A, River Hills, and Defendant Kisker in exchange for two (2) categories of payments.

13.     The first part of the purchase price ("Purchase Price") was a payment of Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) ("Initial Payment") at the closing and deferred payments in the amount of Four Hundred Eighty Three Thousand Dollars and No Cents ($483,000.00) plus interest over an almost five (5) year period, as set forth in Section 2.1.1. of the Agreement.

14.     To ensure the payment of the deferred payment amounts due, Defendant Kisker personally executed a Promissory Note ("Promissory Note") in which he "unconditionally and irrevocably" promised to pay RLA as the payee, attached to the Agreement as Exhibit 2.1.1 (B) thereto, for the principal sum of Four Hundred Eighty Three Hundred Thousand Dollars and No Cents ($483,000.00) with interest at an annual rate of Three and One-Quarter Percent (3.25%) per annum.

15.     The Promissory Note states it "is provided and given pursuant to that certain Agreement for the Purchase and Sale of Assets entered into by and between and among KISKER & ASSOCIATES [sic] a sole proprietorship of Douglas E. Kisker,

RIVER HILLS CONSULTING SERVICES, LLC, a Kentucky limited liability company, ROBERT LESHNER AND ASSOCIATES, INC., an Ohio corporation, and ROBERT H. LESHNER, personally, dated as of the same date shown above."  (Emphasis in original)

16.     Defendant Kisker was to make monthly payments on the first day of each calendar month starting on October 1, 2014 and continuing through the Maturity Date (see definition below) according to the schedule attached to the Promissory Note as Exhibit 1 thereto.  The payments were to be applied first to any charges owed, then to accrued interest and finally to principal. All unpaid principal and accrued interest were due on the Maturity Date.

17.     The Maturity Date was the fifth (5th) anniversary of the date of the Agreement, August 1, 2019.

18.     Defendant Kisker has failed to make substantially all of the payments and upon information and belief owes a total principal balance as of June 20, 2020 of One Hundred Fifty Thousand Nine Hundred Thirty-Four Dollars and Forty Cents ($150,934.40) (exclusive of interest).

19.     The Promissory Note provided that if Defendant Kisker's liabilities and obligations due to RLA (collectively referred to as "Liabilities") were not paid when due and payable or declared due and payable, interest would accrue from the due date of same until paid, at the rate of Three and One-Quarter Percent (3.25%) per annum plus Two Percent (2%).  (Emphasis added.)  The calculated interest due is Fourteen Thousand Two Hundred Eighty-Five Dollars and Eighteen Cents ($14,285.18) as of June 20, 2020.

20.     Upon information and belief the total amount due on the Promissory Note of principal and interest is One Hundred Sixty-Five Thousand Two Hundred Nineteen Dollars and Fifty-Eight Cents ($165,219.58) as of June 20, 2020.

21.     The amounts due are part of Defendant Kisker's Liabilities and were immediately due and payable to RLA without notice to or demand by RLA to Defendant Kisker.

22.     The second component of the purchase price depended on the growth (or decrease) in the value of assets of the transferred clients' accounts from the closing until the third anniversary of the transaction.

23.     K&A, River Hills, and Defendant Kisker agreed in Section 2.1.2. of the Agreement that RLA was to receive annual additional payments based up the assets under management ("AUM") from former RLA clients.  The parties designed this so that if over the designated time period the assets of the transferred clients grew, RLA would receive more money.

24.     Section 2.1.2 of the Agreement requires K&A, River Hills, and Defendant Kisker to pay to RLA and Leshner, in addition to the cash payments agreed to in Section 2.1.1. of the Agreement, an earn out consideration (the "Earn Out") to the extent earned, based upon the AUM (as defined in the Agreement [2]) as follows:   One   Hundred Thousand Dollars and No Cents ($100,000.00) payable on each of the 1 year anniversary, 2 year anniversary  and  3 year  anniversary  of the Closing Date  (collectively, the "Earn Out Period") if  the  market  value  of  RLA's  AUM   attributable to RLA's clients  who

---

[2] Defined in Section 2.1.2.(a) of the Agreement:  "For purposes of this Agreement, the term "AUM" shall mean : the stated market value of all Client Accounts  (as defined  in Section  1.3.l(e) above), expressed  and reflected  in U.S. Dollars,  in all financial  instruments  and other assets, contained in such Client Accounts which accounts, or the financial  equivalent thereto, become accounts of Buyer DEK under a new investment advisory agreement."

7

are clients of buyer K&A on each such anniversary date is at least 90% of the market value of RLA's AUM on the   Closing Date (the "Closing Market Value").   If the attributable AUM on any of the measuring dates is less than 90%, Section 2.1.3 requires K&A, River Hills, and Defendant Kisker to pay RLA an amount equal to the product of such lesser percentage multiplied by the scheduled Earn Out payment.

25.     As per the Agreement at Section 2.1.2.(b), the Earn Out payment for each anniversary date is independent of the other; thus, "achieving the full annual Earn Out amount ($100,000.00) on the first anniversary does not mean that the full annual Earn Out will be achieved on subsequent anniversaries and the failure to meet the full annual Earn Out on the first or second anniversary does not mean that the full annual Earn Out cannot be achieved  on the second ·or third (as applicable) anniversary."

26.     K&A, River Hills, and Defendant Kisker were obliged to account for and pay any amount due for this "change in assets" payment within thirty (30) days of the anniversary dates.

27.     Earn Out payments for the 2nd and 3rd anniversary years of 2016 and 2017 have not been made in full to RLA and are past due.

28.     In addition, K&A, River Hills, and Defendant Kisker refuse to provide documentation that would confirm the amounts unpaid and the amounts actually paid, but damages as of June 20, 2020  on information and belief are thought to be approximately One Hundred Nine Thousand Five Hundred Seventy Dollars and No Cents ($109,570.00), plus interest.

29.     Thus, in violation of Article 2 of the Agreement, as of June 20, 2020, upon information and belief Defendant Kisker has not paid One Hundred Sixty-Five Thousand Two Hundred Nineteen Dollars and Fifty-Eight Cents ($165,219.58) of the deferred payments under the Promissory Note (including interest) and K&A, River Hills, and Defendant Kisker have not paid approximately One Hundred Nine Thousand Five Hundred Seventy Dollars and No Cents ($109,570.00) of the AUM "change in assets" payments.

30.     In addition to the payments for the assets of RLA, K&A, River Hills, and Defendant Kisker also agreed to a number of other payments as part of the Agreement.

31.     As part of the consideration for the Agreement for the parties, K&A, River Hills, and Defendant Kisker agreed to pay all expenses required by regulatory and supervisory agencies of the United States to maintain the transferred clients' records that they had purchased under the Agreement at Section 1.6 of the Agreement and Exhibit 1.6 thereto (the "Record Retention Expenses").

32.     At the time of the Agreement, K&A, River Hills, and Defendant Kisker assumed, *inter alia*, obligations to pay a Document Retention Agreement with an entity known as Docstar ("Docstar") and an Email Retention Agreement as well as a Secure E-mail Agreement with an entity known as Smarsh, Inc. ("Smarsh").

33.     Record Retention Expenses have been paid by RLA to Smarsh upon information and belief of approximately Thirteen Thousand Dollars and No Cents ($13,000.00) to date and upon information and belief to Docstar of approximately Nine Thousand Four Hundred Dollars and No Cents ($9,400.00) to date, for a total of

approximately Twenty Two Thousand Four Hundred Dollars and No Cents ($22,400.00) in Record Retention Expenses.

34.     K&A, River Hills, and Defendant Kisker have failed to pay for any of the Record Retention Expenses for the storage of the RLA historic account records of the transferred clients nor to reimburse RLA for the same, despite demand by its counsel.

35.     Also as an integral part of the Transaction, River Hills and Leshner entered into an Employment Agreement ("Employment Agreement") dated August 1, 2014 for the provision of Leshner's services to K&A.  The Employment Agreement is attached to the Agreement as Exhibit 5.2.6.[3]

36.     The term of the Employment Agreement was for periods of one (1) year commencing upon August 1, 2014 ("Commencement Date") and continuing and automatically renewing on the Commencement Date for additional one (1) year periods until such time as Leshner's employment was terminated pursuant to the terms of the Employment Agreement, if ever.

37.      The Employment Agreement was continually renewed annually until Leshner's death on January 22, 2018.

38.     The terms of the Employment Agreement provided, *inter alia,* that: (a) Leshner was to receive an annual base compensation in the amount of One Hundred Forty Thousand Dollars ($140,000.00) ("Annual Base Compensation") and (b) the Annual Base Compensation would be reviewed for increases on not less than an annual basis

39.     No increases were ever awarded.

---

[3] Section 9.3.5 of the Asset Purchase Agreement states as follows: "Exhibits and Schedules.  All Exhibits and Schedules attached hereto are incorporated herein and made a part hereof by reference."

40.     Under the terms of the Agreement, no reduction in the Annual Base Compensation could be made.

41.     On October 16, 2016, Defendant Kisker provided Leshner with a letter on behalf of River Hills outlining an imposed change in Leshner's annual salary ("Salary Change Letter").

42.     The Salary Change Letter informed Leshner of a salary change constituting fifty percent (50%) of his contracted for salary, i.e., a salary change of Seventy Thousand Dollars and No Cents ($70,000.00), effective immediately.

43.     The reason given for the salary change in the Salary Change Letter was that it was "due to the significant downside change in AUM in the past month."

44.     The reason given for the salary change in the Salary Change Letter was contrary to the Employment Agreement between Leshner and River Hills.  As per the Employment Agreement, the size of the AUM – the subject of the Agreement to purchase RLA's assets -- had nothing to do with, and thus no effect on, Leshner's salary as provided for in the Employment Agreement.

45.     The only effect an AUM change could have would be on monies due as Earn Out payments to RLA, which were part of the Purchase Price as set forth in the Agreement.

46.     By changing Leshner's salary under the Employment Agreement "due to the significant downside change in AUM in the past month" as set forth in the Salary Change letter, K&A, River Hills, and Defendant Kisker were "double dipping" as they were also decreasing the amount due RLA -- under the Agreement -- for Earn Outs, ostensibly on the same basis.

47.     Moreover, it was Leshner's understanding that the salary change was a temporary deferral, which Leshner confirmed as a deferral in a letter to Defendant Kisker, on behalf of River Hills, dated January 1, 2017 ("Leshner Deferral Confirmation").

48.     Leshner remained an employee of River Hills until his death on January 22, 2018.  As such, at the time of his death he was owed approximately Eighty-Seven Thousand Five Hundred Dollars and No Cents ($87,500.00) in deferred salary.

49.     To date, Leshner's deferred salary has not been paid.

50.     All of the contractual payments made in the Agreement, including those set forth *supra*, were personally guaranteed by Defendant Kisker in a Personal Guaranty at Exhibit 7.2 of the Agreement.

51.     Specifically, Defendant Kisker "personally and unconditionally guarantee[d] the prompt, full and complete performance of any and all representations, warranties, covenants, conditions, terms, provisions, and agreements of River Hills Consulting Services, LLC ("River Hills"). . .to the Leshner Entity [defined as RLA] and the payment of any and all indebtedness, damages, costs and expenses (including reasonable attorney's fees and costs of collection) owed to or which may become due to the Leshner Entity under such Purchase Agreement."

52.     Moreover, Defendant Kisker's Personal Guaranty states that "[t]his Guaranty shall remain in full force and effect until the last to occur of the satisfaction by River Hills of the obligations in the Purchase Agreement or their expiration by time as set forth in such Purchase Agreement; provided however that the undersigned shall not be released from the undersigned's obligations hereunder so long as any claim of the Leshner Entity against River Hills which arises out of, or relates to, directly or indirectly,

the Purchase Agreement or any document, agreement, or contract listed as an Exhibit thereto (collectively, the "Written Agreements"), entered into by and between them, are not each settled to the satisfaction of the Leshner Entity or discharged in full." (Emphasis in original.)

53.     Defendant Kisker's Guaranty also states that "[t]his is a guaranty of payment and performance, and not merely a guaranty of collection.  The Leshner Entity may, in its discretion, proceed against Kisker to collect any obligation covered by the Guaranty without first proceeding against River Hills."

54.      Defendant Kisker has refused to honor his Guaranty obligations as monies remain due and owing to Plaintiff RLA under the Agreement.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF PROMISSORY NOTE AGAINST DEFENDANT KISKER

55.     Plaintiff alleges the foregoing paragraphs of this Complaint and incorporates them by reference as if fully rewritten herein.

56.     In an Agreement for Purchase and Sale of Assets (the "Agreement") dated August 1, 2014, Defendant Kisker agreed to payment of a Promissory Note in the amount of Four Hundred Eighty-Three Hundred Thousand Dollars and No Cents ($483,000.00) with interest, payable to Plaintiff RLA.

57.     The amounts due are part of Defendant Kisker's Liabilities and were immediately due and payable to RLA without notice to or demand by RLA to Defendant Kisker.

58.     Despite demand for payment on the Promissory Note, Defendant Kisker has not yet made payment.

59.     Plaintiff RLA does not know the status of and cannot determine the amount of its damages without supporting information in the possession, custody, and control of Defendant Kisker, but on information and belief, Plaintiff RLA has been damaged in the amount of approximately One Hundred Sixty-Four Thousand Two Hundred Nineteen Dollars and Fifty-Eight Cents ($165,219.58).

## COUNT TWO
## BREACH OF PERSONAL GUARANTY AGAINST DEFENDANT KISKER

60.     Plaintiff alleges the foregoing paragraphs of this Complaint and incorporates them by reference as if fully rewritten herein.

61.     As part of the Agreement between the parties, Defendant Kisker personally guaranteed prompt, full and complete performance as well as payment of any and all indebtedness, damages, costs and expenses owed to or which may become due to Plaintiff RLA under the Agreement for Purchase and Sale of Assets.

62.     Defendant Kisker has not fulfilled nor made payment on his Personal Guaranty.

63.     Upon information and belief, damages for breach of Defendant Kisker's Personal Guaranty are in excess of Three Hundred Eighty-Four Thousand Six Hundred Ninety Dollars and No Cents ($384,690.00).

## COUNT THREE
## UNJUST ENRICHMENT AGAINST DEFENDANT KISKER

64.     Plaintiffs incorporate by reference and restate each and every allegation above as if fully rewritten herein.

65.     Defendant Kisker materially breached the provisions of the Personal Guaranty, thus conferring a benefit to which he is not entitled upon himself.

66.     Defendant Kisker has accepted, retained and been enriched by these benefits under such circumstances that it would be unjust for him to retain the benefits without the payment of value.

67.     It would be unjust for Defendant Kisker to retain the benefit of the payments due to Plaintiff RLA under the Agreement.

68.     As a direct and proximate result of Defendant Kisker's unjust enrichment, upon information and belief Plaintiff RLA has suffered substantial damages of approximately Three Hundred Eighty-Four Thousand Six Hundred Ninety Dollars and No Cents ($384,690.00).

## COUNT FOUR
## PUNITIVE DAMAGES AGAINST DEFENDANT KISKER

69.     Plaintiff RLA incorporates by reference and restates each and every allegation above as if fully rewritten herein.

70.     Defendant Kisker, by his actions and inactions as described above, acted with malice and with willful, wanton, and/or reckless disregard for the rights Plaintiff RLA.

71.     Defendant Kisker, by and through his officers, agents and employees, engaged in deliberate and intentional acts and willfully, recklessly, wantonly, and with

total disregard for the rights of Plaintiff RLA and subjected it to unreasonable, unnecessary, and serious injury.

72.     The intentional, willful, wanton, reckless and/or malicious conduct of Defendant Kisker entitles Plaintiff RLA to punitive damages against Defendant Kisker.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Awarding compensatory damages in favor of Plaintiff RLA against Defendant Kisker for all damages sustained as a result of the Defendant Kisker's wrongdoing, in an amount to be proven at trial, including interest thereon;

(b)     Awarding Plaintiff RLA its reasonable costs and expenses incurred in this action, including attorney fees and expert fees;

(c)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(d)      Such other and further relief as the Court may deem just and proper.

Dated:  July 29, 2020.


Respectfully submitted,


By: s/James R. Cummins
      James R. Cummins (KY 87599)
      Cummins Law LLC
      312 Walnut Street, Suite 1530
      Cincinnati, OH  45202
      Telephone: 513-721-9000
      Facsimile:  513-721-9001
      Email:  jcummins@cumminslaw.us
      *Counsel for Plaintiff Robert Leshner &*
      *Associates, Inc.*